```
IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

| | | |
|---|---|---|
| AMIR A. RAHMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24cv333 |
| | ) | |
| WELLS FARGO BANK, N.A., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Plaintiff's "Motion To Seal" (Docket Entry 40) (the "Sealing Motion"). For the reasons that follow, the Court will deny the Sealing Motion.

## BACKGROUND

Alleging various violations of rights during his employment with Wells Fargo Bank, N.A. ("Wells Fargo"), Amir A. Rahman (the "Plaintiff") sued Wells Fargo, Wells Fargo & Company, and associated entities (collectively, the "Defendants"). (See Docket Entry 1.) Thereafter, Plaintiff and his counsel developed "a fundamental disagreement regarding how the litigation of Plaintiff's claims should proceed," prompting counsel to move to withdraw from representation. (Docket Entry 32 (the "Motion to Withdraw") at 1.)[1]

---

[1] Citations herein to Docket Entry pages utilize the CM/ECF footer's pagination.

Plaintiff opposed the Motion to Withdraw, explaining that he "learned information during discovery that [he] believe[d] substantially alter[ed] the nature of [his] claims and open[ed] up the possibility of raising new serious claims[,] . . . [but his attorneys we]re unwilling to pursue those claims." (Docket Entry 40 at 2.) The information in question, however, "was marked confidential [by Defendants] pursuant to [the Parties'] protective order [(see Docket Entry 29 (the "Protective Order"))]." (Docket Entry 40 at 2.) Accordingly, to comply with the Protective Order, "believ[ing] the Court need[ed] to understand more context about the nature of the breakdown of [the] attorney-client relationship," and "[t]o ensure that the Court ha[d] all necessary information to evaluate [Plaintiff's] response to [the Motion to Withdraw]" (id.), Plaintiff filed the instant Sealing Motion with redacted and unredacted versions of his response to the Motion to Withdraw (see Docket Entry 39 (the "Redacted Response"); Docket Entry 41 (the "Unredacted Response"); see also Docket Entry 40 at 2 (explaining that "the Court need[ed the confidential] information to understand [Plaintiff's] reasoning for opposing [the Motion to Withdraw]")).

As relevant here, the Redacted Response states:

1. [Plaintiff] agree[s] that there has been a breakdown in the attorney-client relationship.
2. During discovery, [Plaintiff] learned for the first time that **[REDACTED]**.
3. [Plaintiff] understand[s] this to be a significant discovery in [his] case, **[REDACTED]**.

2

> 4. [Plaintiff] requested to amend [the] complaint to pursue this newly discovered claim but [his] attorneys declined.

(Docket Entry 39 at 1-2.)

As described in the Sealing Motion:

> The first redaction in Paragraph 2 describes the nature of the document [Plaintiff] received in discovery.
>
> The second redaction is a portion of Paragraph 3 that gives context for why [Plaintiff] believe[s] the document might lead to new claims for relief. Although Paragraph 3 contains information about public reporting, [Plaintiff] do[es] not believe that the redacted portion of Paragraph 3 can be disclosed in this case without disclosing the nature of the confidential discovery document referenced in Paragraph 2.

(Docket Entry 40 at 2 (paragraph numbering omitted).)

The Court then conducted a hearing on the Motion to Withdraw. (See Minute Entry dated Dec. 10, 2024.) After hearing testimony from Plaintiff, his counsel, and Defendants (see Docket Entry 43), the Court granted the Motion to Withdraw (see Text Order dated Dec. 11, 2024).

In accordance with this Court's Local Rules, see M.D.N.C LR 5.4(c)(4) (requiring the party claiming confidentiality to file a response in support of sealing, even when that party did not file the motion to seal), Defendants filed a memorandum in support of the Sealing Motion (see Docket Entry 45 (the "Sealing Memorandum")). In the Sealing Memorandum, Defendants assert the following:

> Defendants have had an opportunity to review the [Unredacted Response]. The [Redacted] Response contains

3

redactions applied to two partial sentences within paragraphs 2 and 3, in which Plaintiff discusses information learned only through the exchange of documents in discovery following the initiation of his lawsuit.

Plaintiff testified under oath at the hearing on the Motion to Withdraw (held December 10, 2024) that the only way he learned of the redacted information is because he received documents from Defendants in discovery. Plaintiff confirmed under oath that he understood that the documents he described in his [Unredacted Response] originally belonged to Defendants and that they were produced to him in discovery and pursuant to a Protective Order.

\*\*\*\*\*

In August 2024, the parties jointly moved for an entry of a Protective Order, which this Court approved.

According to the Protective Order parties may designate any document or information contained in a document as confidential if, in good faith, counsel determines that such designation is necessary to protect the interests of the client.

The Protective Order defines "Confidential Information" as information that constitutes strategic business records, information about employees, and information related to private employment-related information.

The information contained in unredacted paragraphs 2-3 of Plaintiff's [Unredacted Response] contains confidential information related to strategic business records belonging to defendant [Wells Fargo] and information about Plaintiff and other employees and their private employment-related information. The redacted information discusses internal actions taken by Wells Fargo while Plaintiff was a current employee and concerns interactions between Plaintiff and employee(s) of various internal department(s) within Wells Fargo. The redacted information also alludes to actions undertaken by Wells Fargo regarding Plaintiff and other employees during Plaintiff's employment.

\*\*\*\*\*

4

> Here, the significant interest[s supporting sealing are] the privacy rights of other employees implicated within the redacted text and the strategic business records belonging to Wells Fargo. Further, the Court has a compelling interest in narrowly denying this access under the First Amendment to protect the privacy rights of other Wells Fargo employees.
>
> The sensitive and confidential nature of personnel-related documents of non-party employees warrants the sealing of such materials and outweighs the presumption of public access.
>
> \*\*\*\*\*
>
> Wells Fargo has a high interest in maintaining the confidentiality of this information and the limited redactions accomplish this task[.]
>
> \*\*\*\*\*
>
> Upholding these limited redactions and granting Plaintiff's [Sealing Motion] protects the privacy rights of Wells Fargo employees, protects Wells Fargo's confidential business and trade information, and honors the parties' Protective Order which proactively sought to prohibit access to this sensitive information by those without need or connection to this case.
>
> \*\*\*\*\*
>
> In the alternative . . . Defendants propose that the Court grant the [Sealing M]otion as to paragraph 2 of Plaintiff's [Unredacted Response] and deny the [Sealing M]otion as to paragraph 3.

(Docket Entry 45 at 2-6 (citations and paragraph numbering omitted).)

## DISCUSSION

### I. Relevant Standards

"The operations of the courts and the judicial conduct of judges are matters of utmost public concern," Landmark Commc'ns,

5

Inc. v. Virginia, 435 U.S. 829, 839 (1978), and "public access [to judicial records] promotes not only the public's interest in monitoring the functioning of the courts but also the integrity of the judiciary," Doe v. Public Citizen, 749 F.3d 246, 266 (4th Cir. 2014). As the United States Court of Appeals for the Fourth Circuit has explained, "[t]he value of openness in judicial proceedings can hardly be overestimated. The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification." United States v. Moussaoui, 65 F. App'x 881, 885 (4th Cir. 2003) (internal quotation marks omitted).

Accordingly, courts traditionally recognize "a general right to inspect and copy . . . judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978). "This right [of public access] 'derives from two independent sources: the common law and the First Amendment.'" United States ex rel. Oberg v. Nelnet, Inc., 105 F.4th 161, 171 (4th Cir. 2024) (quoting Virginia Dep't of State Police v. Washington Post, 386 F.3d 567, 575 (4th Cir. 2004)). As relevant here, "the common law presumption in favor of access attaches to 'all judicial records and documents,'" Stone v. University of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988) (quoting Nixon, 435 U.S. at 597), and "is not insurmountable," In re Application of the U.S. for an Ord.

6

Pursuant to 18 U.S.C. Section 2703(d), 707 F.3d 283, 293 (4th Cir. 2013); instead, "access may be denied if certain substantive and procedural preconditions are satisfied," id.[2]

Substantively, to "overcome the common law presumption of access . . . a court must find that there is a significant countervailing interest in support of sealing that outweighs the public's interest in openness." Id. (internal quotation marks omitted). "The burden of establishing that a particular document should be sealed rests on the party promoting the denial of access." Moussaoui, 65 F. App'x at 889; see also id. (applying this burden to proposed redactions, i.e. documents sealed in part). The factors a court may consider in this balancing test include "whether the records are sought for improper purposes, such as . . . unfairly gaining a business advantage," as well as "whether the public has already had access to the information contained in the records." In re Application, 707 F.3d at 293 (internal quotation marks omitted).

Procedurally, a court must "provide public notice of the sealing request and a reasonable opportunity for the public to voice objections . . . ." Doe, 749 F.3d at 272. The Court may satisfy that obligation by "docketing [the sealing request] reasonably in advance of deciding the issue . . . ." In re Knight

---

2 As discussed below, Defendants fail to overcome the right of public access under the common law, rendering unnecessary any consideration of access rights under the First Amendment.

7

Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984). Further, if a court grants the sealing request, it must "state the reasons for its decision to seal supported by specific findings[] and the reasons for rejecting alternatives to sealing." Id.

## II. Analysis

The Sealing Motion has appeared on the Court's public docket since November 27, 2024. (See Docket Entry 40.) Accordingly, the Court finds all procedural prerequisites satisfied, as any interested persons have received "notice of the request to seal and a reasonable opportunity to challenge [it]." Washington Post, 386 F.3d at 576. The docket does not show any objections to the Sealing Motion (see Docket Entries dated Nov. 27, 2024, to present), nevertheless, as explained below, sealing remains inappropriate.

As an initial matter, Defendants marking information Plaintiff received in discovery as confidential "pursuant to the [P]rotective [O]rder" (Docket Entry 40 at 2), does not itself justify the redactions. As this Court already explained, "the mere fact that a party has designated material as confidential does not entitle the party to file such material under seal." (Text Order dated Aug. 26, 2024 (declining to adopt paragraph in Protective Order providing for automatic sealing).)

In addition, Plaintiff's purported "elect[ion] to withdraw the underlying [Unredacted Response] if the [Sealing Motion] is denied"

8

(Docket Entry 40 at 3), misses the mark. Under this Court's Local Rules, "[w]hen the party filing a motion to seal is also the party claiming confidentiality, that party may elect to withdraw the documents for which sealing is sought if . . . no other party has relied upon the documents . . . ." M.D.N.C. LR 5.4(c)(7). Here, however, Defendants claim confidentiality in the relevant material, not Plaintiff, and Plaintiff relied on that material in opposing the Motion to Withdraw.

For their part, Defendants raise "the privacy rights of other employees implicated within the redacted text" (Docket Entry 45 at 4) and contend that "[t]he sensitive and confidential nature of personnel-related documents of non-party employees warrants the sealing of such materials" (id.). However, the material in question neither reveals non-party personnel information nor identifies any non-party employees. (See Docket Entry 41 at 1-2.)

Moreover, the scope of information in jeopardy of disclosure appears in both a New York Times article (see Docket Entry 48 at 2-3 (unredacted portions identifying the article and "fake interview" practices); Docket Entry 48-1 at 8-11 (unredacted portions describing the "fake interview" practices in relation to Plaintiff's claims)) and in other non-sealed court filings (see Docket Entry 51 at 18-19 (describing the internal action taken by Defendants in the redacted portion of Paragraph 2)). For example, echoing the redacted portion of Paragraph 3, one publicly available

9

document proclaims that a proposed amended pleading "places Plaintiff's complaint in the broader context of Wells Fargo's company-wide 'fake interview' practices, and further describe[s] details of adverse actions against Plaintiff following his internal complaint." (Docket Entry 48 at 3.)

The Court cannot seal "information [that] has already become a matter of public knowledge because . . . once information is announced to the world, [it loses] its secret characteristic." Washington Post, 386 F.3d at 579; see also In re Knight, 743 F.2d at 235 (explaining one factor in the common law analysis as "whether the public has already had access to the information contained in the records"); Kinetic Concepts, Inc. v. Convatec Inc., No. 1:08CV918, 2010 WL 1418312 at *10 (M.D.N.C. Apr. 2, 2010) (unpublished) (noting that, if information subject to sealing remains available elsewhere, "any restriction on public access to that same information . . . would serve no purpose").

Defendants also rely on their interest in protecting "confidential information related to strategic business records . . . ." (Docket Entry 45 at 3; see also id. at 4 (claiming "significant interest [in] . . . strategic business records").) However, to justify sealing, "it is not enough simply to assert this general principle [of protection for confidential business information] without providing specific underlying reasons for the district court to understand how [Defendants' interests]

10

reasonably could be affected by the release of such information." Washington Post, 386 F.3d at 579.

Importantly, although the Supporting Memorandum references "strategic business records belonging to Wells Fargo" (Docket Entry 45 at 4), the redacted statements neither reflect such records, nor any apparently competitively sensitive information (see Docket Entry 41 at 1-2), unlike cases where courts have ordered sealing, see Syngenta Crop Prot., LLC v. Willowood, LLC, No. 1:15CV274, 2016 WL 6783691 at *2 (M.D.N.C. Oct. 6, 2016) (unpublished) (sealing competitively sensitive information that revealed "[defendant's] source of [fungicide], as well as formula statements, registration numbers, chemical formulas, and the like"); Silicon Knights, Inc. v. Epic Games, Inc., No. 5:07-CV-275-D, 2011 WL 901958 at *1-2 (E.D.N.C. Mar. 15, 2011) (unpublished) (describing competitively sensitive information as "trade secrets; discussions of those alleged trade secrets; highly sensitive financial information; and details of [] proprietary projects and licensing programs"); Bon Vivant Catering, Inc. v. Duke Univ., No. 1:13CV728, 2016 WL 7638284 at *2 (M.D.N.C. June 14, 2016) (unpublished) (describing the protected documents as tax records and "a detailed outline of proposed strategies for cost reduction and [budget information], including specific dollar figures").

Put another way, the mere fact that "[t]he redacted information discusses internal actions taken by Wells Fargo"

11

(Docket Entry 45 at 3), does not establish that disclosure of this information would competitively harm Defendants, as necessary to warrant sealing, see, e.g., Sims v. BB&T Corp., No. 1:15-CV-732, 2018 WL 3466945 at *4-5 (M.D.N.C. July 18, 2018) (unpublished) (denying motion to seal internal meeting minutes where "defendants ha[d] not offered any evidence explaining what [internal information] is competitively sensitive or evidence of the type of harm that would occur from disclosure"). In any event, even if this information qualified as competitively sensitive, the prior public disclosure (as discussed above) precludes sealing. See Hatch v. Demayo, No. 1:16CV925, 2020 WL 6161533 at *13 (M.D.N.C. Oct. 21, 2020) (unpublished) (stating the proposed redactions "encompass[ed] publicly disclosed information, negating the justification for sealing").

## CONCLUSION

Defendants have not justified sealing the redacted information.

**IT IS THEREFORE ORDERED** that the Sealing Motion (Docket Entry 40) is **DENIED**. The Clerk shall unseal the Unredacted Response (Docket Entry 41).

This 5th day of March, 2025.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**