## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

AMIR A. RAHMAN,                    )
                                   )
                Plaintiff,         )
                                   )
        v.                         )        1:24cv333
                                   )
WELLS FARGO BANK, N.A.,            )
et al.,                            )
                                   )
                Defendants.        )

### MEMORANDUM OPINION AND ORDER

This case comes before the undersigned United States
Magistrate Judge on the Plaintiff's Motion for Leave to File
Redacted, Amended Complaint (Docket Entry 48) (the "Amendment
Motion"); Plaintiff's Motion to Seal (Docket Entry 49)
("Plaintiff's Sealing Motion"); Defendants' Motion to Seal (Docket
Entry 52) ("Defendants' Sealing Motion"); Plaintiff's Motion to
Compel Discovery (Docket Entry 57); and Defendants' Motion for
Protective Order (Docket Entry 59). For the reasons that follow,
the Court will grant Defendants' Motion for Protective Order and
will deny the other instant Motions.

### BACKGROUND

Alleging various violations of rights during his employment
with Wells Fargo Bank, N.A. ("Wells Fargo"), Amir A. Rahman (the
"Plaintiff") sued Wells Fargo, Wells Fargo & Company, and
associated entities, as well as his direct supervisor Lisa Heagle
(collectively, the "Defendants"). (See Docket Entry 1, ¶¶ 1-5.)

As relevant to the instant Motions, Plaintiff alleges that Defendants terminated his employment in retaliation for protected complaints of discrimination, in violation of 42 U.S.C. § 1981. (See id., ¶ 54.) Plaintiff's factual allegations regarding that claim reflect:

"Since beginning his employment with Defendant Wells Fargo through 2022, [Plaintiff] excelled in his various roles [and] received positive comments from his immediate supervisors who rated his performance as 'Meeting' and/or 'Exceeding' or 'Consistently Exceeding' job performance expectations." (Id., ¶ 10.) After becoming Plaintiff's supervisor in December 2021 (see id., ¶ 11), "Defendant Heagle began making comments to [Plaintiff] stating that she did not trust him and that 'she knows his type.' [Plaintiff] took these comments to be a derogatory reference to his ethnicity" (id., ¶ 12). "During the last quarter of 2022, Plaintiff began to experience the symptoms of stress[,] which exacerbated underlying, serious physical medical conditions." (Id., ¶ 13) At the same time, "Defendant Heagle began to scrutinize and question[ Plaintiff's] work performance, despite the fact that his performance had not changed from his prior years of excellent performance." (Id.) On December 8, 2022, Plaintiff asked Defendant Heagle's supervisor, Lisa Grott, for "workplace accommodations for health conditions he believed to have been exacerbated by Defendant Heagle's discriminatory treatment of him."

2

(Id., ¶ 14.)  Grott "immediately denied" his request and further
"advised [Plaintiff] that she planned to discuss the matter with
Human Resources and to take disciplinary action against him based
upon his request."  (Id.)  To that end, on December 13, 2022,
Defendant Heagle "issued [Plaintiff] a 30-day informal
warning . . ., claiming that he had engaged in negative and
insubordinate behaviors toward her."  (Id., ¶ 15.)

     "As a result of his worsening emotional and physical
conditions and the stress caused by [Defendant] Heagle's
discriminatory and hostile treatment of him, [Plaintiff] became
incapable of performing the usual and customary duties of his
occupation on a sustained basis."  (Id., ¶ 16.)  Accordingly,
Plaintiff began medical leave on December 16, 2022.  (Id.)  During
his leave, "Defendant Heagle[] conducted [his] annual job
performance review and rated his performance as 'inconsistently
meets expectations.'"  (Id., ¶ 17.)  After Plaintiff "returned to
work on a medically restricted, part-time basis" on March 6, 2023,
he "complained to [Grott] about Defendant Heagle's discriminatory
treatment of him, and also[] lodged a discrimination complaint with
Defendant Wells[ Fargo's] Human Resources Department."  (Id.,
¶ 19.)  "In response to [his] internal complaints, Defendant Heagle
asked [Plaintiff] whether he was attempting to use his race and
disabilities 'as a CYA for not taking responsibility.'"  (Id.)
Then, on June 28, 2023, following Plaintiff's return to full-time

employment (see id., ¶¶ 19-21), "Defendant Heagle placed [him] on a formal warning and corrective action plan" (id., ¶ 21), and "[s]ubsequently, on August 1, 2023, [she] placed [Plaintiff] on a paid administrative leave pending an investigation for unidentified reasons" (id.). Finally, on August 28, 2023, Defendants informed Plaintiff that his employment would end effective September 22, 2023. (See id., ¶ 22.)

Plaintiff filed his Complaint on April 18, 2024 (see id. at 19), and Defendants answered on June 14, 2024 (see Docket Entries 13-17). The matter proceeded to discovery on July 12, 2024 (see Text Order dated July 12, 2024), with a January 28, 2025 discovery deadline (see Docket Entry 20, ¶ 2e). On October 31, 2024, Plaintiff moved for an extension of time to respond to Defendants' first set of discovery requests (see Docket Entry 30); the next day, the parties jointly moved to amend the Scheduling Order and extend discovery deadlines (see Docket Entry 31). This Court (per the undersigned) granted both motions, allowing Plaintiff until December 13, 2024, to respond to Defendants' discovery requests (see second Text Order dated Nov. 12, 2024) and, inter alia, extending the discovery deadline to March 28, 2025 (see first Text Order dated Nov. 12, 2024).

Six days later, Plaintiff's counsel moved to withdraw. (See Docket Entries 32, 34.) The following day, Plaintiff, through that same counsel, moved for a second extension of time to respond to

4

Defendants' first set of discovery requests. (See Docket Entry 35.) Following a hearing (see Minute Entry dated Dec. 10, 2024), the Court (per the undersigned) granted both motions, permitting Plaintiff's counsel to withdraw (see second Text Order dated Dec. 11, 2024) and extending Plaintiff's deadline to respond to Defendants' discovery requests to January 13, 2025 (see third Text Order dated Dec. 11, 2024). The Court warned Plaintiff that he "should not anticipate receiving any further extensions of this now twice-extended deadline, regardless of whether or not he retains new counsel . . . ." (Id.)

Plaintiff subsequently retained new counsel, who filed a notice of appearance on January 24, 2025. (See Docket Entry 47.) Shortly thereafter, on February 4, 2025, Plaintiff, through his new counsel, filed the redacted Amendment Motion (Docket Entry 48), related Sealing Motion (Docket Entry 49), and a sealed, unredacted Amendment Motion (Docket Entry 50). Defendants responded in opposition (see Docket Entry 51) and filed their own associated Sealing Motion (Docket Entry 52), after which Plaintiff replied (see Docket Entry 56). In addition, on March 14, 2024, Plaintiff filed the Motion to Compel (Docket Entry 57), as to which Defendants responded in opposition (see Docket Entry 66) and Plaintiff replied (see Docket Entry 68). Finally, in response to a Rule 30(b)(6) Deposition Notice Plaintiff served on Defendants on March 3, 2025 (see Docket Entry 60-1), Defendants filed the

Protective Order Motion (Docket Entry 59), as to which Plaintiff responded in opposition (see Docket Entry 64) and Defendants replied (see Docket Entry 65).

## DISCUSSION

### A. Plaintiff's Amendment Motion

Plaintiff's Proposed Amended Complaint (Docket Entry 50-1) introduces approximately five pages of factual allegations related to the hiring process for a position on Plaintiff's former team, about which Plaintiff lodged an internal complaint (the "Hiring Complaint") in May 2022 "asserting that Defendant Heagle discriminatorily pressured him to hire a less-qualified white woman over a more qualified South Asian man" (Docket Entry 50, ¶ 5). (See id., ¶¶ 4-5; Docket Entry 50-1, ¶¶ 11-31.) Plaintiff learned in discovery that "Wells Fargo changed the title of [his Hiring Complaint] in its internal tracking system [to] 'NYT - fake interview'" (Docket Entry 50, ¶ 6), ostensibly in reference to a May 2022 *New York Times* article entitled, "At Wells Fargo, a Quest to Increase Diversity Leads to Fake Job Interviews" (id., ¶ 5). That article "described a pattern of [Defendant Wells Fargo's] hiring managers interviewing diverse candidates for positions the managers already planned to fill with non-diverse candidates." (Id.) Based on this information, Plaintiff seeks to amend his Complaint by adding factual allegations about the Hiring Complaint and its preceding events and reframing his existing retaliation

6

allegations as "an escalating campaign of retaliation" (Docket Entry 50, ¶ 6) that began with his May 2022 Hiring Complaint, rather than his late 2022 complaint about Defendant Heagle's discrimination <u>against him personally</u>. (<u>Compare</u> Docket Entry 50-1 at 5 (alleging "Defendant Heagle turned on [Plaintiff] after he refused to hire her preferred white candidate" (capitalization omitted)), <u>with</u> Docket Entry 1, ¶ 14 (alleging Plaintiff first complained of discrimination in December 2022, and that said complaint pertained to "Defendant[] Heagle's discriminatory treatment of him").)

Pursuant to the Scheduling Order, "[n]either party shall be permitted to . . . amend pleadings without first requesting leave of court."  (Docket Entry 20, ¶ 4.)  As to such requests, "[t]he [C]ourt should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  This standard affords the Court discretion, "but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).  Moreover, the United States Court of Appeals for the Fourth Circuit has construed <u>Foman</u> as "indicat[ing] that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."  <u>Johnson v. Oroweat Foods Co.</u>, 785 F.2d 503, 509 (4th Cir. 1986).

Case 1:24-cv-00333-WO-LPA    Document 76    Filed 07/11/25    Page 7 of 29

"Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." Laber v. Harvey, 438 F.3d 404, 427 (4th Cir. 2006). In making their assessment, courts "look to the particular circumstances presented, including previous opportunities to amend and the reason for the amendment." Adbul-Mumit v. Alexandria Hyundai, LLC, 896 F.3d 278, 293 (4th Cir. 2018) (internal quotation marks omitted). Generally, "[a] common example of a prejudicial amendment is one that raises a new legal theory that would require the gathering and analysis of facts not already considered by the defendant, and is offered shortly before or during trial." Laber, 438 F.3d at 427 (internal brackets and quotation marks omitted). On the other hand, "[a]n amendment is not prejudicial . . . if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." Id. The Fourth Circuit "ha[s] repeatedly affirmed denials of motions to amend which change the character of the litigation late in the proceedings." Equal Rts. Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 604 n.3 (4th Cir. 2010); see also Reeves v. Ransom, No. 1:10-CV-56, 2011 WL 4549144, at *12 (M.D.N.C. Sept. 29, 2011) (unpublished) ("The proposed amendments thus would complicate this case and magnify the risk of confusion in a prejudicial fashion."); Lover v. District of Columbia, 248 F.R.D. 319, 322 (D.D.C. 2008) ("Allowing a plaintiff to amend his complaint may unduly prejudice a defendant if amendment would . . .

'expand the allegations beyond the scope of the initial complaint.' Parish v. Frazier, 195 F.3d 761, 763 (5th Cir. 1999). Prejudice is likely if 'the amended complaint contains "new complex and serious charges" which would undoubtedly require additional discovery . . . .' Ferguson v. Roberts, 11 F.3d 696, 706 (7th Cir. 1993)." (internal brackets omitted)).

Regarding the nature of the proposed amendment, Plaintiff purportedly "seeks to amend his [C]omplaint to provide a more robust narrative of Defendants' unlawful actions and increase the specificity of his allegations in light of the discovered evidence [regarding the Hiring Complaint]." (Docket Entry 50, ¶ 9.) Plaintiff asserts that the "[Proposed A]mended [C]omplaint is consistent with his original [C]omplaint and the discovery already produced[, ] seeks no new relief[,] and adds no new parties or counts." (Id., ¶ 12.) To that end, he argues that his "original Complaint alleged that he had lodged several internal 'complaints of discrimination – plural – and suffered retaliation because of them" (Docket Entry 56 at 8 (quoting Docket Entry 1, ¶ 54)), and "[t]here was no need to identify with particularity all of Plaintiff's many internal complaints" (id.).

Although Plaintiff's original Complaint does allege that Defendants "terminated [his] employment in retaliation for his complaints of employment discrimination" (Docket Entry 1, ¶ 54; see also id., ¶ 56 ("Defendants' decision to terminate [Plaintiff's]

9

employment was motivated by . . . an intent to retaliate against him because of his complaints of employment discrimination")), its factual allegations reference only complaints about Defendants' "discriminatory treatment of [Plaintiff]" (id., ¶ 14 (emphasis added); see also id., ¶ 19 (alleging Plaintiff "complained to [Grott and Defendant Wells Fargo's Human Resources Department] about Defendant Heagle's discriminatory treatment of him" (emphasis added)). The Complaint lacks allegations regarding Plaintiff's discrimination complaints on behalf of any other individuals, including prospective employees. (See id., ¶¶ 9-29.) Thus, the proposed amendment does not, as Plaintiff contends, "merely detail[] additional facts" (Docket Entry 56 at 1); instead, it "expand[s] the allegations beyond the scope of the initial complaint," Lover, 248 F.R.D. at 322 (internal quotation marks omitted), in a prejudicial manner, as it "contains new complex and serious charges," id. (internal brackets and quotation marks omitted), that Defendants retaliated against Plaintiff for complaining about discriminatory hiring practices. Such charges "would require the gathering and analysis of facts not already considered by [D]efendant[s]." Laber, 438 F.3d at 427 (internal brackets and quotation marks omitted).

Plaintiff argues that, because the proposed amendment relies on information Defendants produced in discovery regarding his internal discrimination complaints referenced in the original

10

Complaint, the Court must treat the new allegations as related to his original claim. (See Docket Entry 50, ¶ 12.) However, Plaintiff's contention that he seeks to amend his pleading to "aid the Court in assessing the relevance of any requested discovery" (id., ¶ 10), and the fact that Plaintiff now seeks extensive discovery based solely on the Hiring Complaint (see Docket Entry 57 (moving to compel discovery concerning Hiring Complaint and underlying hiring process)), belie his assertion that the Amended Complaint's proposed factual allegations constitute a mere elaboration on his already-pled retaliation claim. As Plaintiff's new discovery requests show, expanding the scope of the litigation to encompass a new theory of liability for retaliation based on an earlier complaint about an alleged, company-wide, fake interview scheme "would complicate this case . . . in a prejudicial fashion," Reeves, 2011 WL 4549144 *12.

Turning now to the timing of the proposed amendment, Plaintiff filed the Amendment Motion approximately two months before the close of discovery (see Docket Entry 48 at 5), originally set for January 28, 2025 (see Docket Entry 20, ¶ 2e; first Text Order dated July 12, 2024 (adopting Docket Entry 20)), but extended to March 28, 2025 (see first Text Order dated Nov. 12, 2024). Defendants aver that Plaintiff "has been in possession of all relevant investigative documents since at least September 4, 2024, when they were served in discovery by [Defendant] Wells Fargo" (Docket Entry

51 at 15), and that Plaintiff "himself was aware of the May 2022 hiring incident and failed to include this in his . . . [o]riginal Complaint" (id. at 16).  Plaintiff contends that the delay in moving to amend "is predominantly attributable to the actions of prior counsel" (Docket Entry 56 at 9 (internal quotation marks omitted)), and he "has no present intention of seeking to extend the discovery deadline" (id. at 8).  Nevertheless, although the Court has not yet set the trial date, "a significant amount of discovery has already occurred," Friend v. Remac Am., Inc., 924 F. Supp. 2d 692, 701-02 (N.D. W. Va. 2013), the Court previously extended the discovery deadline, the amendment likely would require another extension of discovery (thereby further delaying resolution of dispositive motions and any trial), and Plaintiff delayed five months in filing the Amendment Motion.  Considering the amendment's timing alongside its nature, which "change[s] the character of the litigation," Equal Rts. Ctr., 602 F.3d at 604 n.3, the proposed amendment would prejudice Defendants.  Accordingly, the Court will deny the Amendment Motion.[1]

_____

        1  For the reasons stated in Deberry v. Davis, No 1:08cv582, 2010 WL 1610430, at *7 n.8 (M.D.N.C. Apr. 19, 2010), the undersigned will enter an order, rather than a recommendation, on the Amendment Motion.  See also Everett v. Prison Health Servs., 412 F. App'x 604, 605 & n.2 (4th Cir. 2011) (treating motion to amend as nondispositive motion subject to magistrate judge's order).  The undersigned similarly may enter an order as to the other, instant, discovery and sealing-related motions.  See Dauphin v. Hennager, 727 F. App'x 753, 755-56 (4th Cir. 2018) (same as to sealing-related motion); Escalante v. Anderson Cnty. Sheriff's

## B. Sealing Motions

### 1. Plaintiff's Sealing Motion

Plaintiff's Sealing Motion "requests the Court's permission to file [an] unredacted version [of the Amendment Motion and Proposed Amended Complaint] under seal." (Docket Entry 49, ¶ 9; see also id., ¶¶ 5-8.) The Amendment Motion and Proposed Amended Complaint contain three proposed redactions that Plaintiff characterizes as "the confidential items of [Defendant Wells Fargo]," (id., ¶ 10). (See id., ¶¶ 3, 5-8.) Pursuant to this Court's Local Rules, "[n]o motion to seal will be granted without a sufficient showing by the party claiming confidentiality as to why sealing is necessary . . . . Failure to file [] supporting materials will result in denial of the motion to seal and unsealing of the materials without further notice." M.D.N.C. L.R. 5.4(c)(3). As Plaintiff's Sealing Motion claims confidentiality on Defendant Wells Fargo's behalf, the Local Rules accordingly required that Defendant Wells Fargo file supporting materials. Defendant Wells Fargo failed to do so (see Docket Entries dated February 4, 2025, through present), and the Court therefore will deny Plaintiff's Sealing Motion pursuant to Local Rule 5.4(c).

---

Dep't, 698 F. App'x 754, 755 (4th Cir. 2017) (same as to discovery-related motion).

## 2. Defendants' Sealing Motion

Defendants "request the Court's permission to file the unredacted version of Exhibit A [(the "Exhibit")] to its Response in Opposition to Plaintiff's [Amendment Motion] under seal." (Docket Entry 52, ¶ 7 (bold font omitted).)  Defendants describe the Exhibit's contents as confidential documents from Wells Fargo's internal database, which they submit "[t]o rebut [] Plaintiff's representations within the [P]roposed Amended Complaint and [Amendment Motion]." (Id., ¶ 5.)  Specifically, Defendants rely on the redacted exhibits to argue that Plaintiff's Proposed Amended Complaint fails as futile.  (See Docket Entry 51 at 7-11.)

As discussed above, the Court found the Proposed Amended Complaint prejudicial to Defendants without reaching their futility argument.  However, even if the Court reached that argument, when assessing a proposed amendment's possible futility, the Court may consider only "sources that courts ordinarily examine when ruling on a Rule 12(b)(6) motion to dismiss," Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 466 (4th Cir. 2011).  In that regard, "[a]t the pleadings stage, courts are limited to considering the four corners of the complaint and the documents attached or incorporated thereto." Guerrero v. Ollie's Bargain Outlet, Inc., 115 F.4th 349, 356 (4th Cir. 2024).  "Consideration of a document attached to a motion to dismiss ordinarily is permitted only when the document is integral to and explicitly relied on in the complaint, and when the

14

plaintiffs do not challenge the document's authenticity." Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 606-07 (4th Cir. 2015) (internal brackets and quotation marks omitted).

Defendants, citing only an out-of-circuit district court case, contend that "[Plaintiff's] allegations [in the Proposed Amended Complaint] necessarily embrace documents produced during [Defendant] Wells Fargo's internal investigation, including interview notes, internal communications and witness statements, all of which are central to his new claims regarding the May 2022 hiring process and alleged retaliation" (Docket Entry 51 at 8) because "the [allegations] are documented in [Defendant] Wells Fargo's records" (id. at 9). (See id. at 8 (citing Mathiason v. Shutterfly, Inc., No. 22-cv-1203, 2023 WL 3477612 (D. Minn. May 16, 2023)).) Thus, they contend, these documents "should be considered by the Court when reviewing the futility of the new allegations" (id.); however, as Plaintiff counters in reply, the Proposed Amended Complaint "references only one document – the one showing that [Defendant] Wells Fargo renamed Plaintiff's [Hiring] Complaint 'NYT - Fake Interview' - which Defendants did not attach [to the Exhibit]" (Docket Entry 56 at 4), such that his "allegations do not incorporate or require consideration of Defendant's [E]xhibit" (id.). Indeed, the Proposed Amended Complaint's general references to an internal investigation do not make Wells Fargo's internal documentation of that investigation "integral" to the Proposed

Amended Complaint; to the contrary, as the Proposed Amended Complaint lacks any explicit reference to the documents in Defendants' Exhibit, the Court may not consider them at the pleading stage, see Zak, 780 F.3d at 606-07.

Given that conclusion, the Court further notes that "[e]very paper filed with the Clerk of this Court . . . requires some portion of the institution's limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice." In re McDonald, 489 U.S. 180, 184 (1989). In other words, "[the C]ourt . . . must control its docket [because] docket expedition is a legitimate and worthy concern." United States v. Colon, 975 F.2d 128, 130 (4th Cir. 1992). Accordingly, district courts possess "'certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Six v. Generations Fed. Credit Union, 891 F.3d 508, 519 (4th Cir. 2018) (quoting Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 107 (2017) (internal quotation marks omitted)). Such inherent powers include the authority to strike improper or unnecessary filings. See, e.g., Iota Xi Chapter of Sigma Chi Fraternity v. Patterson, 566 F.3d 138, 150 (4th Cir. 2009); Morris-Wilkins v. Joyner, No. 5:24-CV-462, 2025 WL 1296214, at *1 (E.D.N.C. May 5, 2025); Morris v. Amtrak, No. CV 24-2260, 2024 WL 4826236, at *3 (D. Md. Nov. 19, 2024); United States v.

16

Rodriguez-Silva, No. 1:18CR68-2, 2019 WL 1937144, at *4 (M.D.N.C. Apr. 8, 2019), adopted by, 2019 WL 1934036 (M.D.N.C. May 1, 2019).

Before exercising that authority, the Court must address the public's "general right to inspect and copy public records and documents, including judicial records and documents," Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978). "'Documents filed with the court are "judicial records" if they play a role in the adjudicative process or adjudicate substantive rights,' such as when 'they were filed with the objective of obtaining judicial action or relief.'" United States ex rel. Oberg v. Nelnet, Inc., 105 F.4th 161, 171 (4th Cir. 2024) (brackets omitted) (quoting In re Application of the U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(d), 707 F.3d 283, 290 (4th Cir. 2013)). The public's right to access such judicial records "derives from two independent sources: the common law and the First Amendment." Id. (internal quotation marks omitted). "Because there are two sources, the right protected by each varies." Id.

As relevant here, the Fourth Circuit recently held that, in the summary judgment context, First Amendment access rights may attach to documents immediately upon filing, even when those documents ultimately do not form the basis of a judicial decision. See id. at 272. In Oberg, the defendants sought to seal documents submitted in connection with a summary judgment motion that the district court never adjudicated because the parties settled the

17

case before the district court ruled on the summary judgment motion. _See id._ In overturning the district court's determination that First Amendment access rights did not attach to the documents in question because they "played no adjudicative role in the case," _id.,_ the Fourth Circuit stated that "the First Amendment right of access to summary judgment materials does not depend on . . . judicial reliance on the documents in resolving the motion," _id.,_ but instead "the right to access protected documents attaches immediately upon their filing," _id._

Although _Oberg_'s holding addressed only the summary judgment context, district courts applying _Oberg_ have reasoned that First Amendment access rights attach upon filing in other contexts. _See Rhoads v. Guilford Cnty.,_ 751 F. Supp. 3d 590, 596-97 n.2 (M.D.N.C. 2024) ("assum[ing], without deciding, that the more stringent First Amendment access rights apply [to documents filed with a motion to dismiss]" and citing _Oberg_ for proposition that, even when "the court concludes that [documents] are unnecessary for the resolution of [a] pending motion . . . . in the summary judgment context[, ] the court must nevertheless determine the propriety of sealing even where the sealed documents bore no role in the court's consideration," thus warranting further discussion of sealing in the motion to dismiss context despite the fact that such documents "would not ordinarily be considered at th[at] stage"); _United States v. McComber,_ No. CR 21-36, 2024 WL 3555319, at *10 (D. Md.

July 23, 2024) (concluding material in presentencing report that "was not a basis for the sentence that was imposed" nonetheless remained "subject to a presumption of public access under the First Amendment" in light of Oberg).

Importantly, however, First Amendment access rights apply only to particular proceedings, including, inter alia, plea hearings, sentencing hearings, and summary judgment motions. See In re Wash. Post Co., 807 F.2d 383, 390 (4th Cir. 1986) (plea hearings and sentencing hearings); Rushford v. New Yorker Mag., Inc., 846 F.2d 249, 253 (4th Cir. 1988) (summary judgment); see also Oberg, 105 F.4th at 172 (stating First Amendment access rights apply to criminal trials and summary judgment motions). Although the Fourth Circuit has yet to clarify whether First Amendment access rights apply to documents submitted with motions to amend a pleading, "[d]istrict courts in this circuit tend to apply the common law right of access[, rather than the First Amendment right of access,] to motions to amend a pleading and supporting documents." Natera, Inc. v. NeoGenomics Lab'ys, Inc., No. 1:23-CV-629, 2024 WL 5245586, at *1 (M.D.N.C. Dec. 18, 2024) (citing Donnelly v. Linden Cap. Partners III, L.P., No. 2:20-CV-3719, 2021 WL 1660703, at *2, 4 (D.S.C. Apr. 27, 2021), Herrmann v. Wells Fargo Bank, N.A., No. 7:19-CV-827, 2021 WL 890573, at *3 (W.D. Va. Mar. 9, 2021), and Benjamin v. Sparks, No. 4:14-CV-186, 2018 WL 4113338, at *2 (E.D.N.C. Aug. 28, 2018)).

19

Moreover, the discussion in <u>Oberg</u> did not manifest any intent by the Fourth Circuit to expand the number of proceedings to which First Amendment access rights apply or to require courts to apply First Amendment access rights to documents barred from consideration by those courts. <u>See</u> <u>Oberg</u>, 105 F.4th at 172-73. In the absence of such discussion, the Court will not treat <u>Oberg</u> as invalidating, sub silentio, authority recognizing that the Court possesses the power (and responsibility) to control its own docket. <u>See</u> <u>Colon</u>, 975 F.2d at 130. Therefore, recognizing its "responsibility [] to see that [its] resources are allocated in a way that promotes the interests of justice," <u>In re McDonald</u>, 489 U.S. at 184, and noting the impropriety of judicial consideration of the documents in Defendants' Exhibit at this point in the litigation, the Court will direct the Clerk to strike Defendants' unredacted Exhibit (Docket Entry 53-1) from the public record and, accordingly, will deny Defendants' Sealing Motion (Docket Entry 52) as moot.

## C. Discovery Motions

Moving now to the parties' discovery-related motions, the Court observes first that "[t]he purpose of discovery is to provide a mechanism for making relevant information available to the litigants." Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment. Therefore, "[u]nless otherwise limited by court order, . . . [p]arties may obtain discovery regarding any

20

nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). However, "the simple fact that requested information is discoverable . . . does not mean that discovery must be had. On its own initiative or in response to a motion for protective order under Rule 26(c), a district court may limit [discovery] . . . ." Nicholas v. Wyndham Int'l, Inc., 373 F.3d 537, 543 (4th Cir. 2004). Indeed, "[d]istrict courts enjoy nearly unfettered discretion to control the timing and scope of discovery . . . ." Hinkle v. City of Clarksburg, 81 F.3d 416, 426 (4th Cir. 1996); see also Cook v. Howard, 484 F. App'x 805, 812 (4th Cir. 2012) (observing that "[d]istrict courts are afforded broad discretion with respect to discovery"). Accordingly, "the [C]ourt has 'substantial discretion' to grant or deny motions to compel discovery." English v. Johns, No. 5:11-ct-3206, 2014 WL 555661, at *4 (E.D.N.C. Feb. 11, 2014) (quoting Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995)).

## 1. Plaintiff's Motion to Compel

At the outset, Defendants contend that "Plaintiff cannot carry his initial burden of showing the discovery sought is within the scope of Rule 26(b)(1)" (Docket Entry 66 at 4), because he "fail[ed] to demonstrate the evidence sought is relevant to the claims and defenses asserted in the operative complaint and

21

proportional to the needs of the case" (id. (emphasis in original)). This argument "inverts the longstanding rule in this Circuit that the parties resisting discovery bear the burden of persuasion in a discovery dispute," Santiago v. Southern Health Partners, No. 1:15CV589, 2016 WL 4435229, at *2 (M.D.N.C. Aug. 19, 2016) (explaining that the 2015 amendments to Rule 26 did not "require shifting the burden of persuasion in all discovery disputes to the party seeking discovery").

Nevertheless, Rule 26 "was amended in 2015 to emphasize the need for proportionality in discovery and to 'encourage judges to be more aggressive in identifying and discouraging discovery overuse.'" Wall v. Reliance Standard Life Ins. Co., 341 F.R.D. 1, 5 (D.D.C. 2022) (quoting Fed. R. Civ. P. 26 advisory committee's notes, 2015 Amendment). In this regard, "[t]he parties and the [C]ourt have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee's notes, 2015 Amendment. To that end, "the [C]ourt must limit the . . . extent of discovery . . . if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). "[That] scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering[,

22

inter alia,] the importance of the discovery in resolving the issues[] and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1) (emphasis added); see also Fed. R. Civ. P. 26(c)(1) (allowing "order to protect a party . . . from . . . undue burden or expense").

Plaintiff moves to compel responses to three interrogatories and five requests for production of documents, all related to the Hiring Complaint. Broadly, Plaintiff seeks:

> the identity and case files of any complaint coded as 'NYT - Fake Interview' or equivalent[,] . . . . the identity and personnel files of the complainants who lodged those complaints[,] . . . . further discovery on the specific interview and hiring process of which Plaintiff complained[, specifically] applicant materials and interview notes, as well as materials related to [the white candidate's] later hiring to a vacancy[, and] clarifying information about the case file [Defendants] produced about his [Hiring C]omplaint.

(Docket Entry 57, ¶ 10 (internal citations omitted).) Regarding his Hiring Complaint, Plaintiff seeks the identities of the manager who expedited the investigation and the employee who authored the annotation in the case file attributing the expediting of the investigation to a manager's request. (See id.)

Defendants object to each discovery request on multiple grounds, all of which (at their core) contest Plaintiff's requests as "not relevant to claims or defenses in the operative complaint[] and not proportional to the needs of the case" (Docket Entry 66 at 2). In that regard, Defendants argue that, as discussed above,

23

"not once in his 84-paragraph [original C]omplaint does Plaintiff mention the *New York Times* article or the alleged 'fake interview'" (Docket Entry 66 at 5), about which he now seeks extensive discovery (see id.). Plaintiff, leaning heavily on the fact that "Defendants produced the . . . investigatory file [coding Plaintiff's Hiring Complaint as 'NYT - Fake Interview'] as responsive to the original Complaint" (Docket Entry 68 at 4), avers that these "discovery requests are relevant to the operative original Complaint, which alleges that Defendants retaliated against Plaintiff for his protected 'complaints of discrimination' in violation of 42 U.S.C. § 1981" (Docket Entry 57, ¶ 18 (quoting Docket Entry 1, ¶¶ 54, 56)).

As already discussed, the original Complaint outlines a retaliation claim based solely on Plaintiff's complaints of discrimination against him. (See Docket Entry 1, ¶¶ 9-29 (setting forth factual allegations regarding Plaintiff's complaints about his own treatment by his supervisor).) The Complaint lacks any indication that Plaintiff complained of discrimination against any other employees or prospective employees. (See id.) Plaintiff instead relies on one generalized claim - that Defendants "terminated [his] employment in retaliation for his complaints of employment discrimination" (Docket Entry 1, ¶ 54; see also id., ¶ 56 (claiming "Defendants' decision to terminate [Plaintiff's] employment was motivated by . . . an intent to retaliate against

24

him because of his complaints of employment discrimination")) - to vastly expand the scope of discovery to include not only his own complaints of discrimination regarding a purported "fake interview," but also any other internal complaint of discrimination, by any other Wells Fargo employee, that Defendants identified as possibly related to the *New York Times* article. Such a request (at a minimum) exceeds any plausible bounds of proportionality. Indeed, Plaintiff's Amendment Motion, which purportedly sought to add factual allegations to, inter alia, "aid the Court in assessing the relevance of any requested discovery" (Docket Entry 48, ¶ 10), and which Plaintiff filed just one day prior to serving the discovery requests at issue (see id. at 5 (dated February 4, 2025); Docket Entry 57, ¶ 9 (stating that, "[o]n February 5, 2025, Plaintiff served a second set[] of discovery requests . . . on Defendants")), cuts against his contention that the requested discovery about the Hiring Complaint bears any meaningful connection to the original Complaint. Accordingly, the Court denies Plaintiff's Motion to Compel as disproportional to the needs of the case.

### 2. **Defendants' Motion for Protective Order**

Lastly, Defendants request "entry of a protective order relieving them of the obligation to produce a corporate witness on the topics contained in [Plaintiff's] Rule 30(b)(6) Deposition Notice." (Docket Entry 59 at 1.) That Deposition Notice

25

identifies three topics for which Plaintiff seeks deposition: (i) "[Defendant] Wells Fargo's investigations related to the *New York Times* article titled 'At Wells Fargo, a Quest to Increase Diversity Leads to Fake Job Interviews'" (Docket Entry 60-1, ¶ 1); (ii) "[Defendant] Wells Fargo's policies and practices related to . . . indicating that an employee's complaint . . . was related to the *New York Times* article" (id., ¶ 2); and (iii) "[Defendant] Wells Fargo's policies and practices related to directing, monitoring, or tracking employment actions taken by [Defendant] Wells Fargo in relation to the *New York Times* article . . . including . . . disciplining and termination of employees whose complaints . . . were flagged . . . as related to the *New York Times* article" (id., ¶ 3).

"A party or any person from whom discovery is sought may move for a protective order." Fed. R. Civ. P. 26(c)(1). "In order to obtain a protective order, the [movant] must demonstrate good cause." Brittain v. Stroh Brewery Co., 136 F.R.D. 408, 412 (M.D.N.C. 1991). Good cause includes "protect[ing] a party . . . from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Generally, the party seeking to prohibit a deposition in its entirety "assumes a heavy burden because [such protective orders] should be rarely granted absent extraordinary circumstances," Static Control Components, Inc. v. Darkprint Imaging, 201 F.R.D. 431, 434 (M.D.N.C. 2001) (internal

26

quotation marks omitted); yet, "[t]rial courts have broad discretion 'to decide when a protective order is appropriate and what degree of protection is required,'" Armitage v. Biogen, Inc., No. 1:17CV1133, 2019 WL 79037, at *2 (M.D.N.C. Jan. 2, 2019) (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984)).

Further, Rule 26(b)(2)(C) mandates that the Court "must limit the frequency or extent of discovery . . . if it determines that[, inter alia,] the proposed discovery is outside the scope permitted by Rule 26(b)(1)," Fed. R. Civ. P. 26(b)(2)(C), which in turn limits discovery to matters "relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1). Notably, "[d]eposition topics that are of minimal relevance are significantly disproportional to what is in dispute with the litigation." Tucker v. Momentive Performance Materials USA, Inc., No. 2:13-CV-4480, 2017 WL 11674365, at *4 (S.D. W. Va. Feb. 24, 2017) (internal quotation marks omitted); see also Jos. A. Bank Clothiers, Inc. v. J.A.B.-Columbia, Inc., Civ. Action No. 15-3075, 2017 WL 75746, at *4 (D. Md. Jan. 6, 2017) (finding deposition topics of "minimal relevance" to the parties' claims "significantly disproportional" to the dispute in the litigation).

For the reasons previously discussed, matters relating to Defendant Wells Fargo's internal investigations into hiring complaints linked to the referenced *New York Times* article bear minimal relevance to Plaintiff's retaliation claim premised on

27

internal complaints that his supervisor <u>discriminated against him</u>.
Accordingly, the topics Plaintiff identified in his Rule 30(b)(6)
Deposition Notice do not satisfy the proportionality limit on the
scope of discovery, and the Court thus will grant Defendants'
Motion for Protective Order as to those three topics.

<b><u>CONCLUSION</u></b>

Plaintiff's Proposed Amended Complaint (Docket Entry 50-1)
changes the nature of the litigation in a manner that would
prejudice Defendants, warranting denial of the Amendment Motion.
Next, Plaintiff's Sealing Motion fails pursuant to Local Rule 5.4.
As to Defendants' Sealing Motion, the Court will strike Defendants'
unredacted Exhibit A in their Response in Opposition to Plaintiff's
Amendment Motion and thus will deem Defendant's Sealing Motion
moot. Finally, because Plaintiff's discovery requests and
deposition topics run afoul of proportionality principles, the
Court will deny Plaintiff's Motion to Compel and will grant
Defendants' Motion for Protective Order.

**IT IS THEREFORE ORDERED** that the Amendment Motion (Docket
Entry 48) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Sealing Motion (Docket
Entry 49) and Defendants' Sealing Motion (Docket Entry 52) are
**DENIED.** The Clerk shall unseal the unredacted Amendment Motion
(Docket Entry 50) and Proposed Amended Complaint (Docket Entry
50-1), strike Defendants' unredacted Exhibit A (Docket Entry 53-1)

from the record, and unseal Defendants' unredacted Response in Opposition to Plaintiff's Motion to Amend the Complaint (Docket Entry 53).

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel (Docket Entry 57) is **DENIED** and Defendants' Motion for Protective Order is **GRANTED.**

This 11th day of July, 2025.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**